(No. 31744.—

CHARLES S. HANDELMAN *et al.*, Appellants, *vs.* GEORGE ARQUILLA, Appellee.

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

MAYER GOLDBERG, and LEONARD L. LEVIN, both of Chicago, for appellants.

HERBERT C. PASCHEN, and FRANCIS J. MAHON, both of Chicago, for appellee.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

The plaintiffs, Charles and Ida Handelman, brought this suit against defendant George Arquilla in the superior court of Cook County for specific performance of a contract whereby defendant undertook to purchase from plaintiffs an unimproved tract of real estate. Defendant filed an answer setting forth two defenses, namely, (1) that

plaintiffs made default in performance of the contract, whereupon defendant elected to declare it void; and (2) that plaintiffs' agent made certain misrepresentations as to the nature of the land, upon which defendant relied in signing the contract. The cause was referred to a master who, after hearing the evidence, recommended the complaint be dismissed. The chancellor entered a decree approving the report of the master and dismissing the suit for want of equity. Plaintiffs appeal directly to this court, a freehold being involved.

The property in question consists of a 120-acre tract of vacant land lying partly within the village of Olympia Fields and wholly within Cook County. No sewage disposal facilities existed in the territory. In the spring of 1948 a real-estate broker, whom plaintiffs had engaged to find a buyer for the property, had several conversations with defendant with reference to a purchase by the latter. Defendant was engaged in the business of constructing houses, and informed the agent that he was interested in buying the property for the purpose of building residences upon it. After considerable negotiation the broker informed defendant he thought the property could be purchased for $600 per acre. Defendant replied he would be interested in buying it provided he could use septic tanks in erecting the homes. The broker assured him septic tanks could be used. At a further conversation defendant said he had heard there had been trouble in that vicinity about the use of septic tanks, and the broker promised to investigate the matter. After consulting some person connected with the county zoning board, the broker again told defendant septic tanks could be used, whereupon defendant signed a contract and paid $5000 earnest money on the purchase price.

Thereafter tests were conducted on the land to ascertain the seepage rate. Ten test holes were dug on various parts of the property, three of which indicated the soil would

be unsuitable for a seepage system, three others showed doubtful results, and four indicated the area would be suitable. It was further found that the soil in the territory was extremely variable, making it necessary to run tests on each individual lot to determine whether the installation could be made. Defendant thereupon notified plaintiffs that he could not proceed with the contract because there was some question as to whether the land could be used for septic tanks. It is not disputed that all negotiations concerning the contract were conducted by defendant with the broker; that plaintiffs had not met or talked with defendant about the matter and had no knowledge of their agent's representation that septic tanks could be used on the property.

Plaintiffs' contentions that defendant failed to prove the defense of fraud by clear and convincing evidence, and that the land was not shown to be unsuitable for use with septic tanks cannot be sustained. Defendant made it clear to the broker that he would enter the contract only if he could build houses with septic tanks. The broker undertook to assure him the land was suitable for such use, and defendant unquestionably relied upon this representation in signing the contract. Where material representations are made to induce another to purchase property, and he does so in reliance upon them, it is immaterial whether the statements are made without knowledge of the truth or with an actual intent to deceive. If they are in fact untrue specific performance will be denied. (*Wisherd* v. *Bollinger,* 293 Ill. 357.) Further, the evidence concerning the condition of the land amply warranted the finding that it was unsuitable for using a subsurface seepage system of sewage disposal. Of the ten test holes made, less than half showed the particular area to be sufficient in seepage rate. The tests were made by qualified engineers, and the conclusions were based upon one inch per hour as the minimum seepage requirement. We cannot say that the findings of fact are

against the weight of the evidence, and they will not, therefore, be disturbed.

Plaintiffs next argue that the representations were not statements of fact but were merely expressions of opinion "to the effect" that county authorities would approve the use of septic tank systems upon the land in question; that as such opinions relate only to future action by administrative officials they do not constitute representations of existing facts upon which defendant was entitled to rely. In further support of this position plaintiffs assert that the record contains no proof of the requirements of the State Department of Public Health, or of any application by defendant for a building permit including the use of a septic tank system. In answer to this argument it is sufficient to point out that the representations contained no mention of any administrative body or its requirements. The statements were that defendant "could use septic tanks." They obviously related to the nature of the soil and the use to which the land was adaptable, and constituted representations of fact, not mere opinions as to future events or matters of administrative action.

Plaintiffs further claim they are not bound by the misrepresentations of their agent. We think this position is likewise without merit. Defendant requested assurance that septic tanks could be used. The agent's statement that they could be used related to a matter inherently connected with the condition of the property and was made in the course of the general business expressly or impliedly entrusted to him by the plaintiffs. The representations were made within the general scope of his authority to obtain a buyer, and if they were not in accord with the truth it is only just that any loss occasioned thereby should be borne by those who selected and commissioned him rather than by the purchaser who was misled by the false statements.

In *Keating* v. *Frint,* 291 Ill. 423, the defendant, who owned certain land in Boone County, entered into a con-

tract with plaintiff to exchange it for plaintiff's tract of land situated in Canada. Neither had seen the Canadian property, but prior to execution of the contract plaintiff referred defendant to a third party for information concerning it. The third party misrepresented the character of the Canadian land, as a result of which defendant was induced to sign the contract. A bill brought by the plaintiff for specific performance was dismissed in the trial court. Upon review this court affirmed the decree, pointing out that the question is not whether the seller is liable in damages for the false statements of the third party, but rather whether the buyer is to be bound by them. The opinion further observes: "The principles which govern in a suit for specific performance are different from those in an action on the case for deceit. 'Specific performance cannot be demanded as a matter of right but rests in the sound discretion of the court, to be determined from all the facts and circumstances of the particular case. If the contract is unreasonable or unjust or for any other good reason should not be performed a decree will not be granted.' (*Wolf* v. *Lawrence,* 276 Ill. 11.) The doctrine that the specific performance of a contract to convey real estate is ordinarily as much a matter of course as an action of damages for its breach, is subject to the qualification, which always applies in equity, that the contract was fairly and understandingly entered into, without any circumstances of misrepresentation, misapprehension or mistake which would make its enforcement oppressive or unjust."

In *Winkelman* v. *Erwin,* 333 Ill. 636, the owners of a tract of land employed a real-estate agent, Mrs. Thompson, to sell it. She succeeded in selling it to appellees under a contract providing for a deed and purchase-money mortgage. Appellees were not acquainted with the owners and had never seen them until after delivery of the deed in performance of the contract. Prior to the execution of the contract appellees went to the property with the agent, who

was also unfamiliar with it. The agent inquired of a neighbor as to the boundaries and, in accordance with information thus obtained, she pointed out certain lines which in fact included twelve acres which were outside the true boundaries. Upon later ascertaining the correct lines, appellees tendered a reconveyance and demanded a release of the mortgage. The vendors refused the tender, and appellees filed a bill to rescind the contract and set aside the deed. A decree granting the relief prayed for was affirmed by this court, which observed: "Mrs. Thompson represented the appellants. She undertook to make the inquiries necessary to determine the location of the boundaries, and the fact that the appellees accepted her statements, based, as she said, upon the inquiries she had made, would not justify holding them responsible for the consequences of their common mistake. * * * Mrs. Thompson made no intentional misrepresentation, but her statement led the appellees to believe that the twelve acres were included in their purchase. Under these circumstances, the appellees, when they discovered the mistake under which they had entered into the contract, were justified in rescinding it."

The same reasoning applies in the case at bar. It cannot be questioned that the contract was induced by the representations of the real-estate agent. In view of the expressed purpose for which the land was to be purchased they were material, and the chancellor was justified by the evidence in finding they were untrue. It does not matter that they were honestly made, or that they were made without the knowledge of plaintiffs. The subject matter of the representation, namely, the nature of the soil and its suitability for a seepage system of sewage disposal, was clearly within the scope of the agent's authority, and plaintiffs cannot compel performance where defendant was thus induced to purchase land materially different from that which he understood he was purchasing.

*Georgacopulos* v. *Hruby,* 316 Ill. 439, cited by plaintiffs, has no application to the case at bar. There the agent, on behalf of his principal, signed a contract of sale purporting to bind the owner to furnish a complete abstract of title or other specified evidence of title, to make covenants of warranty, and to accept a certain sum in cash as a down payment, all of which were beyond the terms specifically authorized by the written agency contract. This court affirmed a decree dismissing a bill brought by the buyer for specific performance, holding that an agent has no authority to bind his principal beyond the terms of the specific authority conferred upon him by the agency contract. In the case at bar the vendor is not attempting to cancel a contract whose terms exceeded the agent's authority, but to enforce an authorized contract against a buyer who was induced to sign it by misrepresentations of the agent concerning its subject matter. In the case cited the agent made certain unauthorized promises on behalf of his principal. Here, the agent made untrue representations of fact, inducing the buyer to sign the agreement which the principal is now attempting to enforce. There is no similarity in the issues presented.

Plaintiffs next contend defendant was not justified in relying on the agent's representations; that he had opportunity to ascertain the truth and should have done so in the exercise of ordinary prudence. In support of this position they point out that defendant is a man of unusual ability and experience, that he had, in fact, previously attempted to purchase this land at an auction sale; and that he must have been informed as to the "circumstances surrounding the need for administrative approval of the use of septic tanks." The argument is not applicable to the facts and circumstances disclosed by the record. As we have heretofore observed, the issue does not involve administrative approval but the character of the land itself. Moreover, we cannot say defendant was negligent in rely-

ing upon the statements of the agent. Whether the land was suitable for septic tank systems was a question which could hardly have been ascertained by mere inspection; it was rather a matter requiring extensive tests of the soil conditions. Defendant was clearly justified in accepting as true the positive assurances of the agent. Although reasonable diligence is required of all persons in making such contracts, it is not enough to prevent equitable relief that the buyer might have discovered the truth had he done all within his power. A suit for specific performance is addressed to the sound discretion of the court, and will not be decreed unless the circumstances show the agreement was fairly entered into, without misapprehension or misrepresentation. Moreover, the rule requiring the vendee, where he has the opportunity, to use reasonable care in inspecting for his own protection, is not applied as strictly in suits in equity as in actions at law. And this is true especially in suits for specific performance. *Stephens* v. *Clark,* 305 Ill. 408.

Plaintiffs lastly complain that the fees allowed the master in chancery are excessive and unreasonable. In his certificate of services, fees and charges, the master requested a total of $1887.40. Of this amount the sum of $167.40 was the fee allowed him under the statute for taking and reporting 1116 folios of testimony and documentary evidence. The remainder, $1720, was allowed for services in considering the evidence, consulting authorities, examining objections, and reporting conclusions, all in accordance with an itemized statement prepared and submitted by the master. No evidence was heard as to the reasonable value of the various items reported. The total time spent, excluding hours spent in hearings or allowances of time for continuances, was 91 hours.

Plaintiffs do not question the amount of time reported by the master, but contend that 91 hours of work do not warrant a charge of $1720. We think the contention is

well founded. While the value of the property involved in the suit is large, it cannot constitute an element for consideration in determining the compensation to be paid to the master in chancery. (*Fitchburg Steam Engine Co. v. Potter,* 211 Ill. 138.) The sum to be paid should be based upon the time necessarily devoted to the work, the intricacy of the proof, and the complications of fact and law involved in preparing the report of his findings and conclusions. While the testimony is somewhat voluminous, much of it is directed to irrelevant matters. The issue was a narrow one, and the character of the questions involved was not difficult or highly complicated. Moreover, the amount requested as compensation, when reduced to a *per diem* basis, is far in excess of the pay received by the chancellor for each day he is engaged in the duties of his office. This court has frequently stated the rule that, as the master's position and responsibility are inferior to those of the chancellor, his *per diem* compensation should not in any event equal or exceed the compensation of the judge when reduced to a *per diem* basis. (*Kerner v. Peterson,* 368 Ill. 59; *Klekamp v. Klekamp,* 275 Ill. 98.) For the master's services in examining the evidence and the law and in reporting his conclusions the sum of $1000 is, in our opinion, ample compensation. This sum, when combined with the statutory fees amounting to $167.40 for taking and reporting evidence, makes a total allowance of $1167.40. Where it appears that the charges allowed to the master in chancery are excessive, this court will reduce the trial court's allowance to an amount which it deems reasonable and sufficient. *Biewer v. Mueller,* 254 Ill. 315.

The decree of the superior court will be modified by reducing the amount of the total allowance to the master from $1887.40 to $1167.40, and, as thus modified, will be affirmed.

*Decree modified and affirmed.*