VASCO TRUCKING, INC., Plaintiff-Appellant, Cross-Appellee, *v.* PARKHILL TRUCK COMPANY, Defendant-Appellee, Cross-Appellant—(ILLINOIS NATIONAL BANK OF SPRINGFIELD, Defendant-Appellee.)

(No. 11397;

Fourth District—June 19, 1972.

*Modified upon denial of rehearing August 22, 1972.*

Olsen & Miller, of Springfield, (Nils A. Olsen, of counsel,) for appellant.

O'Hern, O'Hern and Wombacher, of Peoria, and Linde, Thomson, VanDyke, Fairchild & Langworthy, of Kansas City, Missouri, (Ronald W. Bradley and John R. Cleary, of counsel,) for appellees.

OPINION AS MODIFIED UPON DENIAL
OF PETITION FOR REHEARING

Mr. JUSTICE MILLS delivered the opinion of the court:

■■ Any case begins with facts—not law, but facts. The law comes later. We note, however, that the statement of facts submitted here by appellant is incomplete and fails to "contain the facts necessary to an understanding of the case," as mandated by Illinois Supreme Court Rule 341(e)(6). We are prompted by this deficiency to observe that all rules of practice, whether in trial or reviewing courts, are adopted to promote the orderly and effective operation of the judicial process and are to be complied with.

Although we begin with facts, more particularly we begin here with a contract. A contract between two trucking companies, Vasco and Parkhill, seller and buyer. On February 1, 1969, they entered into a written contract whereby Vasco was to sell its Illinois Commerce Commission certificate of public convenience and necessity, and all of its trucking equipment and materials to Parkhill for $50,000. The deal, of course, was dependent upon the Illinois Commerce Commission granting a transfer of the operational authority from Vasco to Parkhill, and a deposit of $5,000 by Parkhill was placed in escrow with the Illinois National Bank of Springfield (hence the bank's limited participation in this appeal). Only three particular segments of the contract deal directly with the issues here posed, and we will recite the salient verbiage:

A. Vasco represented and warranted "* * * that it owns free and clear of all liens, debts, obligations or encumbrances and capable of free transfer to Buyer, Illinois Commerce Commission Certificate of Public Convenience and Necessity No. 6261 MC-C together with all equipment, materials, supplies, and office equipment described on the List of Equipment * * *."

B. The $5,000 escrow tender was provided for "* * * which sum shall act as a good faith escrow deposit under this agreement and shall be: (1) applied as a credit upon the consideration payable herein, (2) returned to Buyer in the event this agreement becomes null and void, or (3) paid to Seller as full, complete and stipulated damages in the event of Buyer's failure or refusal to consummate following approval by the Illinois Commerce Commission."

C. And the contract closed with the statement that "* * * this agreement contains all the covenants, terms and provisions agreed upon * * * can only be modified, altered or changed by a written agreement signed by the parties hereto; and that neither party shall be

bound by any written or verbal statement, representation or agreement heretofore made between them not in conformity herewith."

Made a part of the contract, of course, was the List of Equipment which catalogued some 14 pieces of rolling stock consisting of tractors, lowboys, flatbeds, and an office trailer, plus a medley of sundry equipment, materials and office furniture.

Now to the pertinent facts. Within a few days after the execution of the contract the $5,000 escrow deposit was placed with the bank, and on March 20, 1969, a joint application was filed with the Illinois Commerce Commission to transfer the certificate of authority. A hearing was conducted on May 27, 1969, and the matter was taken under advisement by the commission. During the time of advisement Vasco continued to operate the truck line under the ICC authority. Mr. Brady, the principal shareholder of Vasco, testified that he informed Mr. Briscoe of Parkhill of certain encumbrances on the equipment under the contract. Mr. Briscoe, however, testified that he relied entirely upon the warranties under the contract and that he was never told of any encumbrances until certain creditors started to pick up some of the equipment in midsummer of 1969; nor was he aware of the Illinois National Bank's position as a creditor and lienholder of some of Vasco's rolling stock until the attorney for Parkhill learned of this sometime in September, 1969. Brady (Vasco) admitted that most of the equipment scheduled in the contract was mortgaged to the Illinois National Bank at the time of the contract, had been originally mortgaged in 1967 and was still encumbered at the time of trial in this suit. He also admitted that other items of equipment were subject to mortgages held by Credit Alliance, that the equipment covered by the contract was not free of encumbrances at the time the contract was entered into, and that free title could not be conveyed until after the liens and encumbrances were first satisfied. Brady further admitted that a federal tax lien for employment taxes was filed against Vasco in October, 1969.

The uncontradicted evidence is that of the 14 pieces of rolling stock covered by the contract, 8 were subject to the 1967 security interest of the Illinois National Bank, 1 was subject to a 1968 mortgage in favor of Credit Alliance and 4 were conveyed under a security interest to the same bank exactly nineteen days *after* the contract was executed (and one of those four was already subject to a prior security interest in favor of Carver and Company). The proof is also unrefuted that during the summer of 1969 Carver picked up actual possession of the two pieces of equipment in which it then had security interests, and another tractor mortgaged to the bank under the 1967 security agreement was being held by a truck repair firm for labor, parts and storage. At approximately

the same time that Carver picked up the two truck tractors, a garnishment against Vasco was served upon Parkhill. As soon as these developments in July and August made it obvious that there were liens and encumbrances on the equipment, Parkhill opted to cease operating under its separate leases of two additional trucks to Vasco. This determination was made prior to the order of the Illinois Commerce Commission entered in August of 1969 granting the transfer of Vasco's certificate to Parkhill. A final meeting was held between Vasco and Parkhill in September, 1969, and Vasco was advised that there would be no consummation of the contract by Parkhill. Thereafter, Parkhill petitioned the ICC to vacate its order of transfer, and under the Illinois Commerce Commission's rules the certificate remained with and in Vasco.

Vasco sued Parkhill for specific performance of the contract, compensatory damages and punitive damages. Parkhill counterclaimed for recovery of the $5,000 in escrow. Vasco's principal argument is that it was entitled to specific performance because it could comply with the contract at the time of the payment of the purchase price, by receiving same, paying off the liens and encumbrances, then conveying clear title to Parkhill; and that because of Parkhill's refusal to comply with the contract they were entitled to both compensatory and punitive damages. Parkhill, on the other hand, takes the position that the misrepresentations and false contractual warranties of Vasco constituted a failure to be ready, willing and able to comply with the agreement, making the contract null and void. The case went to the trial judge sitting without a jury and he found: Vasco was not entitled to specific performance but was entitled to receive the $5,000 as liquidated damages under the contract. This appeal followed with Vasco appealing from the denial of specific performance and for a larger award of damages, and Parkhill counter-appealing for a return of the $5,000 escrow.

■■ We agree with the trial judge that specific performance must be denied to Vasco, but we disagree that Vasco is entitled to the $5,000 in escrow as liquidated damages. Parkhill, under the circumstances here posed, was clearly justified in treating the contract as null and void, and was therefore entitled to the return of the escrow deposit.

Even a cursory and fleeting examination of the contract and the evidence undeniably demonstrates that Vasco had violated the contract even before the ink was dry! Virtually all of the equipment covered by the contract was burdened with liens, debts, obligations and encumbrances of one form or another and Vasco on the date of contract was totally incapable of free and clear transfer of title thereto. This was in absolute and complete contradiction of the warranty that it gave in the contract.

So that there be no mistake as to our frame of reference, let us define "warranty".

*Black's Law Dictionary,* Revised Fourth Edition, 1968, tells us that a "warranty" is "A statement or representation made by the seller of goods, contemporaneously with and as a part of the contract of sale, though collateral to the express object of it, having reference to the character, quality, or title of the goods, by which he promises or undertakes that certain facts are or shall be as he then represents them." And in *Metropolitan Coal Co. v. Howard,* 155 F.2d 780, 784, Judge Learned Hand, in his usual pithy style, wrote: "A warranty is an assurance of one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascerain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past. To argue that the promisee is responsible for failing independently to confirm it, is utterly to misconceive its office."

■■ There was a material misrepresentation by Vasco—unquestionably —and equity will not reward such conduct with specific performance of a tainted contract. Our Illinois Supreme Court held in *Wisherd v. Bollinger,* 293 Ill. 357, 364, 127 N.E. 657:

"It is well established in this State that a contract will not be specifically enforced unless it is fair, just and reasonable and *free from* fraud and *misrepresentations* and unless the contract was entered into understandingly and *without material misrepresentations.*" (Emphasis added.)

And in the later case of *Handelman v. Arquilla,* 407 Ill. 552, 95 N.E.2d 910, 913, we find a further enunciation of the rule:

"Where material representations are made to induce another to purchase property, and he does so in reliance upon them, it is immaterial whether the statements are made without knowledge of the truth or with an actual intent to deceive. If they are in fact untrue specific performance will be denied."

■■ Vasco, however, argues that all that it needed in order to convey good title was to have the purchase price paid to it, and from that sum all liens would be satisfied. We cannot entertain such fatuous contention. Both common sense and Professor Williston tell us that "* * * if one party to a contract is unable to perform unless he first receives performance from the other party which, by the terms of the contract, is not due until the same time that his own performance is due, he cannot recover * * *. Thus, one who has contracted to sell goods cannot rely on obtaining the promised price as a means of purchasing the goods

with which to fulfill his concurrent obligation  \*  \*  \*. And a similar rule has been applied where the seller of land requires the buyer's money as a means of perfecting the title which he was to convey." *Williston on Contracts,* Revised Third Edition, Section 81, Pages 384-385.

In *Blunt v. Kelly,* 219 Ill.App. 327, the seller under a written contract attempted to use the buyer's money to pay off certain liens and encumbrances. The court refused to permit this, saying that concurrent obligations on both parties were imposed by the contract and that the buyer and seller were directed to act simultaneously in its performance—neither party was required to act before the other. The buyer, the court reasoned, "\*  \*  \* was certainly not obliged to put up his money to await the uncertain outcome of negotiations, possibly involving litigation, looking to the ouster of the parties in possession and the removal of any claims or equities they might have." (Page 333.) That case suggests more than a fleeting appearance of parallel, since the record before us reflects existing liens, repossessed equipment, a truck held for unpaid repairs, a garnishment and a federal tax lien.

In the totality of the evidence it is our view that the misrepresentations concerning the encumbered equipment were so blatant and material to the contract that Parkhill was fully supported in treating the agreement as null and void, thus being entitled to a return of the escrow deposit. We so hold.

The trial court's denial of specific performance to Vasco is affirmed, its award of the escrow deposit to Vasco as liquidated damages is reversed; and we remand with the direction that the trial court enter judgment in favor of Parkhill for the $5,000 now held in escrow.

Affirmed in part, reversed in part and remanded with directions.

TRAPP, P. J., and CRAVEN, J., concur.