DESPINA REGOPOULOS *et al.*, Plaintiffs-Appellees, v. WAUKEGAN PARTNERSHIP *et al.*, Defendants-Appellants.

First District (3rd Division) No. 1—90—2640

Opinion filed December 30, 1992.

Wildman, Harrold, Allen & Dixon, of Chicago (David J. Fischer, Roderick A. Palmore, and Ellen J. Neely, of counsel), for appellants.

Barry A. Erlich, of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Despina Regopoulos, Elaine Regopoulos, Virginia Navilio and Sophia Bravos, brought this action against defendants, Waukegan Partnership and Herbert Saywitz, seeking rescission and monetary damages based on fraud and breach of warranty in connection with the purchase of a 60,000-square-foot commercial building and the accompanying four acres of land located at 1620 North Lewis Avenue, Waukegan, Illinois (Building). Defendants filed a counterclaim seeking the balance due on a promissory note and monetary damages based on fraud and misrepresentation in connection with payment and cancellation of the note. Following a bench trial, the trial court entered judgment in favor of plaintiffs and against defendants in the amount of $133,220 on the complaint, to be set off by judgment on the counterclaim in favor of defendants and against plaintiffs in the amount of $12,000 plus accrued interest. Defendants appeal from the judgment, and plaintiffs cross-appeal.

On appeal, defendants contend that (1) the trial court erred when it precluded them from presenting evidence that Waukegan Square Limited Partnership is not the true purchaser of the Building; (2) the trial court erred in its interpretation of the parties' purchase agreement; (3) the trial court's ruling in favor of plaintiffs and against defendants on the breach of warranty claim is contrary to the manifest weight of the evidence; (4) the trial court erred when it ruled that defendants intended to release plaintiffs from their obligations under the promissory note; and (5) the trial court erred when it failed to award prejudgment interest on the $12,000 judgment entered in the counterclaim. On cross-appeal, plaintiffs contend that (1) the trial court's ruling in favor of defendants and against plaintiffs on the counterclaim is contrary to the manifest weight of the evidence; and (2) the trial court erred in its computation of damages in the breach of warranty claim. We affirm as modified.

On December 31, 1986, plaintiffs entered into a purchase agreement with defendant Waukegan Partnership to purchase the Building for a total purchase price of $1,013,862.71. The purchase agreement contains certain covenants, representations and warranties that provide, *inter alia*, to the best of defendants' knowledge, there are no material physical or mechanical defects in the roof or heating, ventilation and air conditioning (HVAC) system of the Building as of the date of purchase. The purchase agreement also provides that Perry Posten, the sole and exclusive broker working in connection with the sale of

the Building, is entitled to a brokerage commission of $75,000, one-half ($37,500) to be paid by each party.

Payment of the purchase price of the Building consisted of cash, plaintiffs' assumption of defendants' outstanding first mortgage on the Building and a promissory note payable to the order of Waukegan Partnership. The promissory note contains certain penalty provisions providing that if the outstanding principal balance of the note is not paid in full by June 30, 1987, the principal amount of the note is to be increased by $10,000 per month, with a maximum increase of $200,000, and plaintiffs would be obligated to pay an additional interest payment in the amount of $1,500 per month, decreasing by $75 per month until the principal amount of the note is paid.

Plaintiffs sought to pay the principal balance of the note before June 30, 1987, in order to avoid these penalty provisions. Plaintiffs requested a setoff letter from defendants itemizing all credits and debits made to the principal amount of the note. When plaintiffs received the setoff letter, however, defendants' attorney credited only $25,500 from the outstanding balance of the note for defendants' share of the brokerage commission owed to Posten, rather than the $37,500 amount designated in the purchase agreement. On July 1, 1987, following a one-day extension of payment, plaintiffs paid defendants the principal amount due on the note, less the $12,000 disputed amount, which was placed into a joint escrow account pending resolution of the dispute at a later date. Shortly thereafter, the note was returned to plaintiffs stamped "CANCEL."

In July 1987, plaintiffs were informed by a tenant of the Building that there had been substantial problems with the roof and the HVAC system of the Building for several years. After an inspection by roofing and HVAC experts revealed that the roof was in very poor condition and that all nine rooftop HVAC units were in serious disrepair, plaintiffs brought this action in the circuit court. Defendants filed a counterclaim. On the first day of trial, the trial court granted plaintiffs' motion to substitute Waukegan Square Limited Partnership (WSLP) as the nominal plaintiff. After directing a finding in favor of defendants on the fraud and rescission claims in plaintiffs' complaint, the trial court ruled that defendants breached an express warranty contained in the purchase agreement, and entered judgment in favor of plaintiffs and against defendants in the amount of $133,220. On the counterclaim, the trial court entered judgment in favor of plaintiffs on the fraud and misrepresentation claim, but ruled that defendants were entitled to the escrowed balance of the promissory note and entered judgment in favor of defendants and against plaintiffs in the

amount of $12,000 plus accrued interest, to be set off against the judgment entered in favor of plaintiffs on the breach of warranty claim. It is from these judgments that plaintiffs and defendants appeal.

Defendants first contend that the trial court erred when it precluded them from presenting evidence that WSLP is not the true purchaser of the Building. We disagree. Plaintiffs filed a motion to amend its complaint in order to substitute WSLP as the nominal plaintiff. Defendants objected to plaintiffs' motion, arguing that plaintiffs were the true purchasers of the Building, not merely nominees or agents of WSLP, and had resold the Building to WSLP for a substantial profit, thus sustaining no damages or having any basis for their claimed legal and equitable relief. The trial court granted plaintiffs' motion to substitute WSLP as the nominal plaintiff, ruling that defendants had judicially admitted plaintiffs' status as agents of WSLP.

Defendants made the following averment in their answer to plaintiffs' complaint and in their counterclaim:

> "Plaintiffs at all times relevant to the transactions between the parties were acting as agents for and on behalf of an entity known as [WSLP]. Contemporaneously with their signing of the purchase agreement, plaintiffs assigned to [WSLP] their beneficial interest to the subject matter of the purchase agreement."

■ Plaintiffs admitted this averment in their reply to defendants' affirmative defenses and the answer to the counterclaim. It is well established that a fact admitted in a verified pleading is a formal, conclusive judicial admission which is binding on the pleader and which dispenses wholly with proof of that fact. (*Winnetka Bank v. Mandas* (1990), 202 Ill. App. 3d 373, 396, 559 N.E.2d 961, 975.) It is clear that defendants' averments here are not the product of mistake, inadvertence or oversight, but rather are affirmative declarations made by experienced counsel. Moreover, the record is devoid of any evidence to support defendants' contention that plaintiffs are not merely nominal purchasers. We, therefore, conclude that the trial court did not err when it precluded defendants from presenting evidence that WSLP is not the true purchaser of the Building.

Defendants next argue that the trial court erred in its interpretation of the parties' purchase agreement. The purchase agreement contains the following provisions:

"9. *Covenants, Representations and Warranties of Seller.*

A. In order to induce Purchaser [plaintiffs] to enter into this Agreement Seller [defendants] covenants, represents and warrants, as the case may be, to Purchaser as follows:

\* \* \*

(12) To the best of Seller's knowledge, the Buildings [*sic*] have been constructed in good and workmanlike manner and of good quality materials, are fit for their intended use, and there are no material, physical or mechanical defects in the condition of the Buildings, including, but not limited to, the roofs, exterior walls or structural components of the Buildings and the heating, air conditioning, plumbing, ventilating, elevator, utility, sprinkler and other mechanical and electrical systems, apparatus and appliances located on the Buildings.

\* \* \*

(22) To the best of Seller's knowledge, there are no facts material to the use and operation of the Project which Seller has not disclosed to Purchaser.

\* \* \*

C. This Agreement shall not be cancelled or merged on the Closing. Each and every warranty of Seller shall be deemed to have been relied upon by Purchaser, notwithstanding any investigation Purchaser may have made with respect thereto, or any information developed by or made available to Purchaser prior to the Closing and consummation of this transaction."

■ Defendants first contend that the trial court erred in interpreting the parties' purchase agreement when it relieved plaintiffs of the burden of proving that their reliance upon the express warranties contained in the purchase agreement is reasonable. We disagree. Recent decisions of this court have dispensed with the reasonable reliance element in breach of warranty actions, requiring only that the purchaser prove that the warrantor gave a warranty as an inducement to make the purchase and that the purchaser actually relied upon the warranty in order to establish a *prima facie* case for breach of an express warranty. (See *Coryell v. Lombard Lincoln-Mercury Merkur, Inc.* (1989), 189 Ill. App. 3d 163, 169, 544 N.E.2d 1154, 1158; *Wheeler v. Sunbelt Tool Co.* (1989), 181 Ill. App. 3d 1088, 1100, 537 N.E.2d 1332, 1340-41; *Hrosik v. J. Keim Builders* (1976), 37 Ill. App. 3d 352, 354, 345 N.E.2d 514, 515; *Vasco Trucking, Inc. v. Parkhill Truck Co.* (1972), 6 Ill. App. 3d 572, 575-76, 286 N.E.2d 383, 386; but *cf. Michuda v. Sanitary District* (1940), 305 Ill. App. 314, 349-50, 27 N.E.2d 582, 598 (requiring purchasers to prove that a reasonable per-

son would also have relied upon the warranty in order to recover in a breach of warranty action).) Furthermore, our review of plaintiffs' actions here, including their compliance with defendants' request to avoid the Building and their reliance upon paragraph 9C of the purchase agreement, which was undoubtedly inserted into the purchase agreement to protect plaintiffs from the consequences of not conducting an inspection, indicates that plaintiffs' actual reliance upon the express warranties is reasonable.

■ Defendants next contend that the trial court erred in interpreting the parties' purchase agreement when it failed to properly allocate the burden of proof in plaintiffs' breach of warranty claim. Defendants argue that the trial court required defendants to prove plaintiffs' lack of reasonable reliance upon the warranties rather than requiring plaintiffs to affirmatively establish their own reasonable reliance. After reviewing the record in its entirety, we conclude that the trial court did not improperly allocate the burden of proof in this matter.

■ Defendants next contend that the trial court erred in interpreting the parties' purchase agreement by requiring defendants to affirmatively discover conditions of which they had no actual knowledge. This contention is without merit.

In its memorandum of opinion, the trial court stated:

"Defendant Saywitz was no doubt familiar with the condition of the building. He managed it for two years, owned it for several years, and was a landlord for several years. To believe his testimony that 'he had no knowledge of the condition of the roof and heating and air conditioning units,' would require the Court to reject not only the Plaintiffs' testimony, but three seemingly impartial witnesses who convincingly testified to the poor condition of the roof and heating and air conditioning units."

From its ruling, it is plain that the trial court did not, as defendants assert, "interpret the defendants' warranty as a guaranty that the building's roof and HVAC units were, in fact, in good condition." Rather, the memorandum of opinion clearly establishes that the trial court determined that defendants were fully aware that material physical or mechanical defects existed in the roof and HVAC system at the time of the sale of the Building. We, therefore, conclude that the trial court did not err in its interpretation of the parties' purchase agreement by requiring defendants to affirmatively discover conditions of which they had no actual knowledge.

■ Defendants next argue that the trial court's ruling in favor of plaintiffs and against defendants on the breach of warranty claim is contrary to the manifest weight of the evidence. Defendants do not dispute that the purchase agreement contains an express warranty, that this warranty was given in order to induce plaintiffs into purchasing the Building, or that plaintiffs actually relied upon the warranty. Rather, defendants contend that they did not breach the express warranties contained in the purchase agreement because they were unaware of the problems that existed in the roof and HVAC system when they sold the Building to plaintiffs. The record, however, does not support defendants' contention.

John Sarantakis, the tenant of the Building at the time of the sale to plaintiffs, testified that there were significant problems with the leaking roof and the HVAC system throughout his tenancy in the Building, and that he complained "a lot" about these problems to Saywitz and Tom Ogrodowski, the vice-president in charge of operations for Saywitz's management company. In addition to Sarantakis, two independent certified experts testified about the deteriorating condition of the roof and HVAC system. William Early, a certified roofing consultant, testified that he inspected the building in September 1987. Early testified that his inspection revealed that the roof was in very poor condition, including corrosion of the metal roof deck, deteriorating asphalt, water-saturated felts, holes and splitting in the roofing membrane, blisters (adhesion voids between layers of the roof, which if broken, cause the membrane to split open and enable moisture to permeate the roofing membrane) and alligatoring (a condition where the roofing asphalt shrinks, causing it to become brittle and eventually resulting in extensive roof leakage). Although Early was unable to date exactly when the deteriorating condition of the roof would have been visible, he stated that the roof would have shown signs of dilapidation, including alligatoring and disintegration of the roof decking, at least three months prior to plaintiffs' purchase of the building.

Darryl DeSteffen, a certified HVAC consultant, inspected the HVAC system of the Building in October 1987. DeSteffen's inspection revealed that only one HVAC unit was operative in the heating mode and that all nine rooftop HVAC units were in some state of disrepair. DeSteffen testified that repair parts had been cannibalized from other units, leaving two of the machines virtually gutted, and that the HVAC system had not been competently maintained and serviced within at least one year prior to his inspection. Additionally, DeSteffen's inspection revealed the presence of carcasses and skeletons of

pigeons and other animals inside some of the units, indicating substantial neglect of the HVAC system for a prolonged period of time.

After reviewing the record in its entirety, we find there is sufficient evidence to support the trial court's determination that material physical or mechanical defects existed in the roof and HVAC system of the Building, notwithstanding any repairs that had previously been made, at the time of sale of the Building, and that defendants were fully aware of these defects when they conveyed the Building to plaintiffs. We, therefore, conclude that the trial court's ruling in favor of plaintiffs and against defendants on the breach of warranty claim is not contrary to the manifest weight of the evidence.

■ Defendants next contend that the trial court erred when it ruled that defendants intended to release plaintiffs from their obligations under the promissory note. This contention is also without merit. The record in the present case reveals that defendant Saywitz directed his attorney to cancel the promissory note after plaintiffs had paid the balance due on the note less the disputed amount and deposited the disputed funds into the joint escrow account pending resolution of the dispute. Shortly thereafter, defendants' attorney returned the promissory note to plaintiffs with the word "CANCEL" stamped on the last page of the note. We agree with the trial court that the only reasonable interpretation of defendants' action here is that the parties intended for plaintiffs' payment of the note less the disputed amount and placement of the disputed funds into the joint escrow account to constitute a release and satisfaction of the promissory note. We, therefore, conclude that the trial court did not err when it ruled that defendants intended to release plaintiffs from their obligations under the promissory note.

■ Defendants next contend that the trial court erred when it failed to award prejudgment interest on the $12,000 judgment entered in the counterclaim. This contention is also without merit. The Illinois Interest Act provides:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." Ill. Rev. Stat. 1987, ch. 17, par. 6402.

It is well settled that a party cannot recover prejudgment interest unless it is expressly permitted by statute or there is an agreement between the parties. (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.* (1991), 224 Ill. App. 3d 559, 590, 586 N.E.2d 600, 621.) The parties do not dispute that no agreement exists providing for prejudgment interest on the disputed amount. We find that because defendants released plaintiffs from the promissory note, they are not entitled to prejudgment interest pursuant to the note. We also find that because plaintiffs had a good-faith belief that judgment on the disputed amount would be entered in their favor, plaintiffs' failure to release money from the escrow account was neither vexatious nor unreasonable. We, therefore, conclude that defendants have not established a basis for recovering prejudgment interest under the statute.

■ On cross-appeal, plaintiffs argue that the trial court's ruling in favor of defendants and against plaintiffs on the counterclaim is contrary to the manifest weight of the evidence. We disagree.

The purchase agreement provides that Perry Posten, the sole and exclusive broker working in connection with the sale of the Building, is entitled to a $75,000 brokerage commission for his efforts, $37,500 to be paid by each party. Defendants issued a promissory note to Posten to secure payment of the brokerage commission (Posten note). The Posten note contains an "Early Payment Bonus," which permits the borrower to pay the note in full by June 30, 1987, at a reduced balance of $25,500. In the event that the note is not paid in full by June 30, 1987, the reduced balance increases by $600 per month, with the maximum increase to $37,500, the face amount of the note.

The parties agreed that plaintiffs would assume payment of the Posten note, and that defendants' share of the commission would be credited from the principal amount owed by plaintiffs on the parties' promissory note. When defendants' attorney prepared the setoff letter, she credited the early payment bonus reduced balance of $25,500, rather than the $37,500 face amount of the Posten note, from the outstanding principal amount of the parties' promissory note. Plaintiffs immediately disputed the amount defendants' attorney credited from the parties' note, claiming they were entitled to a credit of the face amount of the note rather than the early payment bonus reduced balance.

We find that defendants' attorney properly credited $25,500 from the outstanding balance of the parties' note. Absent an agreement to the contrary, plaintiffs are entitled to a credit equal to the amount of liability they assumed. In the present case, if plaintiffs paid the Pos-

ten note in full the day they assumed it from defendants, they were obligated to pay Posten $25,500 pursuant to the early payment bonus. Accordingly, we see no reason why plaintiffs should be entitled to a credit from the outstanding balance of the note greater than $25,500. We, therefore, conclude that defendants properly credited $25,500, rather than $37,500, from the outstanding principal balance of the parties' promissory note.

■ Plaintiffs next contend that the trial court erred in its computation of damages in the breach of warranty claim. In its computation of damages, the trial court determined that the reasonable cost of restoring the roof to the condition as warranted was $96,000. The trial court further determined that the cost of repairing the HVAC system to the condition as warranted was $37,220. When computing the cost of restoring the roof to the condition as warranted, the trial court determined that the reasonable cost of repairing the roof was $192,000, discounted by 50% due to the increased life expectancy of the roof. We find there is an adequate basis in the record to support the trial court's determination of damages for defendants' breach of warranty of the condition of the roof. When computing damages for defendants' breach of warranty of the HVAC system, however, the trial court deducted $8,402, the amount plaintiffs had previously expended for service and repair of the HVAC system, from the $45,622 sum it determined was reasonable for repairing the HVAC system to the condition as warranted. Because the cost of plaintiffs' previous expenditures for service and repair of the HVAC system is irrelevant to the computation of damages here, we find no basis for the trial court's deduction of $8,402 from its award of damages in the present case. We therefore hold that the trial court should have awarded damages based on defendants' breach of its express warranties to plaintiffs in the amount of $141,622.

Accordingly, the order and judgment of the circuit court is affirmed, except that the award of damages is modified as stated herein.

Affirmed as modified.

GREIMAN, P.J., and CERDA J., concur.