**Robert MOWBRAY, Plaintiff,**

v.

**WASTE MANAGEMENT HOLDINGS, INC., Defendant.**

**No. Civ.A. 98–11534–WGY.**

United States District Court, D. Massachusetts.

April 26, 1999.

Edward F. Haber, Shapiro, Haber & Urmy, LLP, Boston, MA, for Robert Mowbray, on his own behalf and on behalf of all others similarly situated, plaintiff.

James R. Carroll, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, John A. Sten, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, for Waste Management Holdings, Inc., defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I.  *Introduction*

The plaintiff, Robert Mowbray ("Mowbray"), brings this action against the defendant, Waste Management Holdings, Inc. ("Waste Management"), alleging that it breached its contract with Mowbray when certain financial representations made by Waste Management turned out to be untrue. Mowbray has filed a motion for partial summary judgment as to liability on the breach of contract claim ("Motion for Summary Judgment"), arguing that there are no disputed material facts with respect to Waste Management's breach of contractual representations and warranties. Waste Management opposes the Mo-

tion for Summary Judgment on several grounds, and responds with a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) ("Motion for Judgment on the Pleadings"), arguing that Mowbray failed to allege reliance, which is an essential ingredient of his contract claim. Mowbray in turn opposes the Motion for Judgment on the Pleadings by arguing that applicable state law does not require reliance when the existence of the warranty is undisputed and that, even if it does, Mowbray has alleged that he did rely on the warranty by affidavit filed in support of his opposition to the Motion for Judgment on the Pleadings. Finally, Mowbray files a motion for leave to file an amended complaint ("Motion to Amend") which seeks to insert an allegation of reliance into the complaint, as well as to add a new count for negligent misrepresentation.

After several rounds of filings, the parties have isolated the determinative issue for the Court: whether Illinois law requires a party to rely on an express warranty in order to sue for its breach. Although resolution of this issue is not unambiguous, the Court rules that Illinois law does not require reliance when the warranty is express and undisputed.

## II. *Factual Background*

On July 31, 1992, Mowbray entered into an asset sale agreement (the "Agreement") with Waste Management and its wholly owned subsidiary, Waste Management of Dedham, Inc., wherein, in exchange for shares of Waste Management stock, Mowbray sold substantially all of the assets of Waste Disposal, Inc., a Massachusetts corporation wholly owned by him. *See* Haber Aff.Ex. A.

Section 2.23 of the Agreement reads:

*Section 2.23 Securities Representations.* Seller and Owners have received a prospectus of WMI dated May 7, 1992 with a supplement thereto dated June 29, 1992[,] an annual report of WMI for the year ended December 31, 1991 together with unaudited reports to the shareholders for the first quarter of the current year, and a WMI Report on Form 10–K for the year ended December 31, 1991 (collectively, the "Securities Filings").

*Id.* Section 3.5 of the Agreement reads:

*Section 3 Representations and Warranties and Agreements of Purchaser and WMI.* The Purchaser and WMI make the following representations, warranties and agreements:

*Section 3.5 Financial Statements and Reports.* WMI has previously furnished the Seller and the Owners with true and complete copies of the Securities Filings. As of their respective dates, the Securities Filings did not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading. Since December 31, 1989 WMI has filed with the Securities and Exchange Commission all reports and registration statements and all other filings required to be filed with the Securities and Exchange Commission under its rules and regulations. The audited financial statements of WMI included or incorporated by reference in the Securities Filings have been prepared in accordance with generally accepted accounting principles applied on a consistent basis (except as may be indicated therein or in notes thereto) and fairly present the financial position of WMI as at the dates thereof and the results of its operations and changes in financial position for the periods then ended.

*Id.*

The audited financial statements of Waste Management contained or incorporated by reference in the Securities Filings included the audited financial statements for Waste Management for the year ended December 31, 1991 (the "1991 Financial Statements"). Those reports represented

that Waste Management's earnings for the years ended December 31, 1989, December 31, 1990, and December 31, 1991 were $562,135,000; $684,762,000; and $606,323,000 respectively. *See id.* at Ex. C. Also included among the Securities Filings were the unaudited reports for the quarter ended March 31, 1992 (the "1992 Report") which represented that Waste Management's earnings for the first quarter of 1991 and 1992 were $165,653,000 and $192,094,000, respectively. *See id.* at Ex. E.

On February 24, 1998, Waste Management issued a press release (the "Press Release") which read in part:

> During the comprehensive financial review, management and the Audit Committee determined that certain items of expense were incorrectly reported. These principally relate to the calculation of vehicle, equipment and container depreciation expense and capitalized interest. In the depreciation area, the Company employed incorrect vehicle and container salvage assumptions, and made mistakes in the corporate financial reporting process . . .
>
> . . . The Company is accordingly restating its financial results for the years 1992 through 1996 and the first three quarters of 1997. The effect of the restatements is to reduce previously reported net income by a total of $180.9 million for the first nine months of 1997, $231.4 million in 1996, $263.8 million in 1995, $156.9 million in 1994, $110.3 million in 1992, and $208.9 million in 1991 and prior periods.

*See id.* at Ex. F.

Mowbray views the admissions contained in this Press Release as dispositive of his breach of contract claim. He therefore seeks partial summary judgment as to Waste Management's liability for breaching the pertinent representation and warranty clauses of the Agreement. Waste Management does not dispute the contents of the Agreement or the facts recited in the Press Release, but instead seeks dismissal of Mowbray's breach of contract claim because he failed to allege reliance, an essential element of that claim. In the alternative, Waste Management opposes summary judgment on the grounds that (1) Mowbray has not offered any potentially admissible evidence to support its motion, and (2) Waste Management has had insufficient opportunity for discovery regarding the extent and character of Mowbray's reliance on the alleged misrepresentations and any possible waiver by Mowbray of the warranty protections. Mowbray, in turn, has moved to amend his complaint to add both an allegation of reliance, and a new count for negligent misrepresentation.

## III. Analysis

### A. Whether Reliance Is a Required Element under Illinois Law

■ Illinois law [1] is not entirely clear on whether reliance is an essential element for breach of contact claims that are premised on warranty provisions. As a threshold matter, it is clear that reliance is *not* a required element for ordinary breach of contract suits. *See Chamberlain Mfg. Corp. v. Maremont Corp.*, No. 92–0356, 1995 WL 103803, at *7 (N.D.Ill. Mar. 6, 1995) ("To establish a breach of contract under Illinois law, [a plaintiff] must show: (1) the existence of a valid and enforceable agreement; (2) performance by the [p]laintiff; (3) breach of the contract by defendant; and (4) damage or injury proximately resulting from the breach."); *id.* at *8

---

1. Section 10.11 of the Agreement provides that it "shall be governed by and construed in accordance with the laws of the State of Illinois applicable to contracts made and to be performed therein." Haber Aff.Ex. A. The parties do not dispute the effectiveness of this selection, nor does the Court. *See Northeast*

*Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 610 (1st Cir.1993) ("In the absence of a conflict with public policy, Massachusetts honors choice-of-law provisions in contracts, and, in this diversity case, so must we.") (citations omitted).

("[A] breach of contract claim does not require [the plaintiff] to prove reliance....").

It is also clear that reliance *is* a required element for determining whether an express or implied contractual warranty has been created. *See Beckett v. F.W. Woolworth Co.*, 376 Ill. 470, 34 N.E.2d 427, 430 (1941) ("A positive assertion of a matter of fact made by a seller at the time of the sale, for the purpose of assuring the buyer of the fact and inducing him to make the purchase, if relied on by the purchaser, constitutes a warranty."); *Hrosik v. J. Keim Builders*, 37 Ill.App.3d 352, 345 N.E.2d 514, 515 (1976) ("Essential to the formation of a warranty is the buyer's reliance on the representations of the seller."). This doctrine is equivalent to the "basis of the bargain" rule found under the Uniform Commercial Code. *See, e.g., Stamm v. Wilder Travel Trailers*, 44 Ill. App.3d 530, 3 Ill.Dec. 215, 358 N.E.2d 382, 385 (1976) (noting that under section 2–313 of the Uniform Commercial Code, the " 'affirmation of fact or promise' ... [must] be part of the 'basis of the bargain,' before an express warranty is created.").

What is *not* clear, however, is whether reliance is a required element where, as here, no dispute exists over the creation and effectiveness of the contractual warranty. Cases addressing this question under Illinois law have produced divergent results. Mowbray relies upon *Wikoff v. Vanderveld*, 897 F.2d 232, 241 (7th Cir.1990), a Seventh Circuit decision under Illinois law that squarely held, "[t]he 'basis of the bargain' rule is not applicable to situations where the warranties are clear and express." *Id.* at 241. In *Wikoff*, the defendant, like Waste Management in this case, did not challenge the existence of the warranty. Nevertheless, the district court held that the plaintiff could not have relied upon the warranty because it conducted its own independent investigation of the warranted facts prior to signing the agreement. The Seventh Circuit reversed, holding that where the

express warranty's existence is undisputed, the plaintiff can be considered to have relied upon it as matter of law. *See id.* Thus, the question of reliance is irrelevant to the determination whether an express warranty has been breached, assuming the warranty has been effectively created. *See Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 91 n. 2 (7th Cir.1985) ("The [basis of the bargain] rule is not relevant to the problem presented here, in which the warranties made were clear and express, there is no question of materiality and the only issue is whether they were breached.").

Mowbray also relies upon *Pension Benefit Guar. Corp. v. Ziffer*, No. 91–C–7762, 1994 WL 11654, 1994 U.S.Dist. LEXIS 87 (N.D.Ill. Jan. 4, 1994), a federal district court case applying Illinois law that provides an even more complete explanation of the role of reliance in warranty actions. In *Pension Benefit*, the plaintiff alleged that the defendants, who sold a company's stock, breached their warranty that the stock was free and clear of liens and encumbrances. *See id.* at *17. In rejecting the argument that the plaintiff's case failed because he had not proven reliance on the warranty, the court stated that it was "analytically unsound" to incorporate a reliance requirement into a breach of warranty action when the warranty is set forth expressly in the contract. *Id.* at *24 (quoting *Ainger v. Michigan Gen. Corp.*, 476 F.Supp. 1209, 1224–1225 (S.D.N.Y.1979) ). The court also noted that to the extent judicial decisions "use the word 'reliance' in warranty cases," it "relates to the first element of proof, existence of the contract," and not to the question of breach. In short, the court "disagree[d] that reliance is an essential element of the cause of action for breach of warranty" when the warranty at issue is "express, rather than implied." *Id.* at *23.

Waste Management in turn relies on *Chamberlain*, a later opinion from the same federal district court, which dis-

cussed this precise issue at length.[2] As will become clear, however, the *Chamberlain* court's ultimate holding appears to rest on a misreading of pertinent precedents. In *Chamberlain*, the plaintiff claimed that the defendant's failure to disclose pending worker's compensation claims prior to sale of the defendant's business amounted to a breach of the representation that no litigation or other proceedings were pending against the business. The defendant in turn claimed that the plaintiff had sufficient information from which to piece together the existence of the worker's compensation claims and thus the plaintiff could not have relied upon the representation. The district court noted that if the warranty provision is treated as an ordinary contractual breach, no reliance is required. *See id.* at *7. On the other hand, the court noted, some language from Illinois case law seems to indicate that breaches of warranty must be supported by evidence of reliance. *See id.* Thus, the court found itself in a dilemma: "To say that [the defendant] breached the contract, because it failed to satisfy its obligation under [the warranty], creates the possibility that [the defendant] would be liable for a breach of contract (which included the warranty), but not for breach of the warranty (because a genuine issue exists with respect to whether [the plaintiff] knew about the workers' compensation liabilities and therefore did not rely on the alleged nondisclosures to its detriment.)." *Id.* at *8.

The plaintiff in *Chamberlain* attempted to solve the dilemma for the court by noting that *Wikoff* does not require reliance when the actual existence of the warranty provision is not in dispute. *See id.*

The court, however, attempted to distinguish *Wikoff* by stating that in the present case the issue was whether the plaintiff relied on the warranty once it was created: "The issue of reliance on a warranty after its creation was not at issue in *Wikoff*, . . . ." *Id.* at *9. With all due respect to the District Court of Illinois, the issue of reliance after a warranty's creation was not at issue in *Wikoff* precisely because *Wikoff* held that, after a warranty's creation, reliance is no longer an issue. This misreading can be seen in the other case that the *Chamberlain* court cites for its conclusion, *Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir.1992). The *Chamberlain* court reads *Metromedia* as standing for the proposition that "a plaintiff must prove justifiable reliance on the warranty to prove a breach of warranty claim." *Chamberlain*, 1995 WL 103803, at *9. In fact, the *Metromedia* court held that reliance is assumed as matter of law when the warranty's effective existence is undisputed. *See Metromedia*, 983 F.2d at 360.

Thus, the *Chamberlain* court's decision, and by extension Waste Management's argument, rests on a misreading of the relevant precedents. Instead, the Court follows *Wikoff* and *Pension Benefit* by holding that proof of reliance is unnecessary when the existence of a contractual warranty is undisputed. *See Pension Benefit*, 1994 WL 11654, 1994 U.S.Dist. LEXIS 87 at *23–24 (collecting cases); *CBS, Inc. v. Ziff–Davis Publ'g. Co.*, 75 N.Y.2d 496, 503, 554 N.Y.S.2d 449, 553 N.E.2d 997, 1000–01 (N.Y.1990) (holding that when express warranties are bargained-for terms of a contract, the purchaser can maintain an action for breach even though the purchaser expressed

---

**2.** Waste Management also cites a series of Illinois state court cases for the proposition that reliance is required to show breach, rather than just creation, of warranty provisions. These cases, however, simply hold that a plaintiff need only show actual rather than reasonable reliance for the determination of whether an express warranty was created. *See, e.g., Regopoulos v. Waukegan Partnership*, 240 Ill.App.3d 668, 181 Ill.Dec. 384, 608

N.E.2d 457, 461 (1992) (discussing whether trial court properly dispensed with need to prove reasonable reliance). As such, they are restricted by their facts to cases in which the existence or scope of a warranty is at issue. *See, e.g., Spectramed, Inc. v. Gould, Inc.*, 237 Ill. Dec. 578, 710 N.E.2d 1 (Ill.Ct.App.1998) (determining whether parties intended warranty to cover breaches that occurred after contract's closing).

doubt of the truthfulness of the warranted facts). This result prevents the ambiguity of tort-like principles such as reliance from destroying the certainty of an express contract. In fact, by keeping reliance out of the legal question of whether an express warranty may be enforced, the Court increases the likelihood that a party actually can rely on the warranty. When a party requires certain representations and warranties as a bargained-for term of an agreement, that party is seeking contractual protections. Requiring additional proof of reliance, beyond the unambiguous statement of the contractual agreement, is not only unnecessary, it may paradoxically undermine the ability of a party to rely on the warranty by calling its enforceability into doubt.

In sum, because reliance is not an essential element to show breach of an express warranty the formation of which is undisputed, and because Waste Management has admitted the existence of the Agreement and its warranty provisions, Waste Management's Motion for Judgment on the Pleadings is DENIED.[3]

### B. *Whether Mowbray Has Met His Summary Judgment Burden*

■ Waste Management offers no substantive argument against the Motion for Summary Judgment besides its ill-founded contention that reliance is an essential element of Mowbray's claim.[4] Recognizing that the burden on plaintiffs who move for summary judgment is, in practical effect, more stringent than on defendants, the Court must put Mowbray to a demanding test. *See Penelope v. Brown,* 792 F.Supp.

132, 136 n. 5 (D.Mass.1992) (noting that the party who bears the burden of proof on an issue at trial "must live up to a heightened standard on the issue ... at summary judgment"). However, without *any* allegations from Waste Management to contradict the testimony of Mowbray, the success of the Motion for Summary Judgment becomes a simple matter of whether Mowbray's proffered evidence by itself is enough to sustain judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is material if it has the potential to affect the outcome of the litigation under the applicable law; it is genuine if there is evidence sufficient to support rational resolution of the point in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a summary judgment motion the Court is obliged to view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Dubois v. United*

---

**3.** This holding also nullifies Waste Management's argument that the Agreement's silence as to reliance by Mowbray is significant. *Compare* Haber Aff.Ex. A § 2 ("In order to cause [Waste Management] to enter into this Agreement ... [Mowbray] make[s] the following representation ... each of which is independently relied upon by [Waste Management] regardless of any other investigation made or information obtained by [Waste Management] ....") *with id.* at § 3 ("[Waste Management] make[s] the following representations, warranties and agreements....").

Regardless of whether Waste Management's warranties were accompanied by a recital of reliance by Mowbray, the contractual provisions are effective and Mowbray may show breach without proof of his own reliance.

**4.** Waste Management does offer two minor, "alternative" arguments to the Motion for Summary Judgment. These arguments, one evidentiary and one procedural, are discussed *infra* Section II(C), (D).

*States Dep't of Agric.,* 102 F.3d 1273, 1284 (1st Cir.1996). Notwithstanding the liberality of this standard, the nonmovant cannot simply rest on unsworn allegations. *See Morris v. Government Dev. Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 842 (1st Cir.1993) (quoting *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993)). The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted).

In this case, because Waste Management has not challenged the factual proffer made by Mowbray with respect to liability, the question essentially becomes whether Mowbray's proffer meets his initial burden. Notably, Mowbray is *not* required to make an affirmative showing that there are no material facts in issue. Rather, Mowbary need only demonstrate that Waste Management has not proffered enough evidence to permit a reasonable trier of fact to find in its favor. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Milton v. Van Dorn Co.,* 961 F.2d 965, 969 (1st Cir.1992).

With those considerations in mind, the Court turns to the undisputed facts. Waste Management has admitted that:

▶ The parties executed the Agreement. *See* Answer and Affirmative Defenses of Defendant Waste Management Holdings, Inc. ¶ 6 ("Answer").

▶ The Agreement contains the representation and warranty sections quoted above. *See* Answer ¶¶ 10, 11.

▶ The warranted Securities Filings incorporated by reference the 1991 Financial Statements and the 1992 Report. *See* Answer ¶¶ 13, 16.

▶ The 1991 Financial Statement reported that Waste Management's earnings for the years ended December 31, 1989, December 31, 1990, and December 31, 1991 were $562,135,000; $684,762,000; and $606,323,000 respectively. *See* Answer ¶ 14.

▶ The 1992 Report stated that earnings for the first quarter of 1991 and 1992 were $165,653,00 and $192,094,000, respectively. *See* Answer ¶ 18.

▶ On February 24, 1998, Waste Management restated its income downward for 1992 in the amount of $110.3 million and for 1991 and prior periods in the amount of $208.9 million. *See* Answer ¶ 23, 40.

▶ The Press Release, which was issued by Waste Management, reported that the income restatement was due to "certain items of expense [that] were incorrectly reported." Specifically, "[i]n the depreciation area, [Waste Management] employed incorrect vehicle and container salvage value assumptions, and made mistakes in the corporate financial reporting process." *See* Answer ¶ 26; Haber Aff.Ex. F.

These facts are not in dispute. The only question therefore is whether the facts are sufficient to show that the Securities Filings (and incorporated financial statements) were not "prepared in accordance with generally accepted accounting principles ("GAAP")" or did not "fairly present the financial position of [Waste Management] as at the dates thereof and the results of its operations and changes in financial position for the periods then ended." Haber Aff.Ex. A. § 3.5.

The Court rules that the above recited facts are sufficient to establish liability on the breach of warranty. In its Answer, Waste Management denied that the income restatements amounted to violations of Section 3.5 of the Agreement. *See* An-

swer ¶¶ 20–24. In its opposition to the Motion for Summary Judgment, however, Waste Management has adduced no evidence to contradict its own admissions that financial information was "incorrectly reported" and that it "made mistakes in the corporate financial reporting process." In short, Waste Management has not met its burden "to establish the existence of at least one factual issue that is both 'genuine' and 'material.'" *Terry v. Electronic Data Sys. Corp.*, 940 F.Supp. 378, 381 (D.Mass.1996).

Waste Management does attempt to dodge the Rule 56 bullet by offering two other legal arguments. First, Waste Management argues that summary judgment cannot be granted because the Press Release would be inadmissible at trial under Federal Rule of Evidence 407 as a subsequent remedial measure. Without the Press Release, Waste Management believes that Mowbray has not satisfied his initial burden of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Second, Waste Management asks the Court to delay summary judgment under Rule 56(f) so that it can seek discovery on the question whether Mowbray relied upon or waived the warranty provisions of the Agreement. These arguments will be addressed in turn.

### C. Whether Evidence of the Press Release Would Be Admissible

■ Rule 407 provides that "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence [or] culpable conduct. ..." Fed.R.Evid. 407 (1948). Waste Management argues that its Press Release constitutes evidence of subsequent remedial measures, that it is inadmissible under Rule 407 and that, therefore, Mowbray cannot rely on the Press Release in its

Motion for Summary Judgment. *See United States v. O'Connell*, 890 F.2d 563, 566 (1st Cir.1989) ("Under Rule 56[e], the facts set forth in the affidavits must be 'admissible in evidence' before they can be considered by the court in a summary judgment determination.").

Or so the argument goes. As an initial matter, it is important to note that Waste Management has already admitted in its Answer that the income restatements occurred. *See* Answer ¶ 23, 40. Downward restatement of gross earnings by $3,500,-000,000, *see* Haber Aff. at Ex. F, is a highly extraordinary action for a corporation to take. One could argue that breach of the warranty is shown by this fact alone, because the preadjusted figures contained in the Securities Filings plainly did not "fairly present the financial position of [Waste Management]." All the Press Release adds is the fact that the misrepresentations occurred because of "mistakes in the corporate financial reporting process."

Nevertheless, Waste Management contends that without the Press Release, Mowbray is dead in the water, and thus the Court addresses its argument head-on. Waste Management cites several cases in which evidence of a defendant's revision of Securities and Exchange Commission filings was inadmissible to prove violations of federal securities laws. *See, e.g., Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994); *Krouner v. American Heritage Fund., Inc.*, 899 F.Supp. 142 (S.D.N.Y. 1995). These cases are inapposite, however, because they each involve causes of action for which defendant's culpability is an essential element. For instance, *Malone* involved a fraud claim under Section 10(b) of the Securities Exchange Act which requires proof of "a mental state embracing intent to deceive, manipulate, or defraud." *Malone*, 26 F.3d at 478. Thus, the court excluded evidence of a Form 10–K in which the defendant corporation abandoned its allegedly fraudulent practice of withholding certain information from the Securities and Exchange Commission.

The court reasoned that "[t]he potential prejudice from introducing the Form 10–K is clear: jurors likely would view its disclosure of rights of return as proof of culpable conduct, akin to a landlord's fixing a stairway after being sued by an injured tenant." *Id.* at 480.

No such danger exists in an action for breach of warranty. As a case on a contract, Mowbray's cause of action does not require proof of any culpability or other mental state on the part of Waste Management. Instead, Mowbray need only show the fact of breach. Thus, the policy considerations which underlie Rule 407 are simply not raised by the instant case. *See All the Chips, Inc. v. OKI America, Inc.,* No. 88–8378 1990 WL 36860, at *4 (N.D.Ill. Mar. 16, 1990) ("Breach of contract ... requires no showing of any sort of fault, thus apparently negating the operation of Rule 407."). Indeed, the Eighth Circuit has held, specifically in an action for breach of warranty, that because the plaintiffs are not required to establish negligent or culpable conduct, Rule 407 is inapplicable to alleged subsequent remedial measures. *See R.W. Murray, Co., v. Shatterproof Glass Corp.,* 758 F.2d 266, 274 (8th Cir.1985); *see also Seaside Resorts, Inc. v. Club Car, Inc.,* 308 S.C. 47, 416 S.E.2d 655, 661 n. 2 (Ct.App.1992) (Bell, J.) ("[T]he rule against admission of subsequent remedial measures does not apply to claims for breach of warranty."); *cf. Bandstra v. International Harvester Co.,* 367 N.W.2d 282, 287 (Iowa Ct.App. 1985) ("[Rule 407 of the Iowa Rules of Evidence] does not require the exclusion of evidence of subsequent measures when offered in connection with a claim based on ... breach of warranty....").

Waste Management also cites *Raymond v. Raymond Corp.,* 938 F.2d 1518 (1st Cir.1991), a case in which the First Circuit held that Rule 407 applies to a breach of warranty action under Massachusetts law. Like Waste Management's other authorities, this case is inapposite because it concerns a cause of action for which evidence of negligence or culpable conduct is required. Specifically, *Raymond* held that Rule 407 applies to strict liability actions for product-caused injuries; thus, the warranty at issue in *Raymond* was an *implied* warranty, the breach of which depends upon proof of design, warning or other product defect. *See Raymond,* 938 F.2d at 1522–23. Such a cause of action raises the policy concerns of Rule 407 in a way that the instant case does not. The threat of possible evidentiary use in products liability actions may chill manufacturers from making socially beneficial safety improvements. No similar threat faces the party who contemplates breaching an express warranty, at least no threat that the party did not voluntarily assume by making the warranty in the first place.

For these reasons, the Court rejects Waste Management's argument that the Press Release is an inadmissible addition to the record in support of Mowbray's summary judgment motion.

### D. *Whether the Rule 56(f) Motion Should Be Allowed*

■ As a final effort to avoid summary judgment, Waste Management requests that the Court grant a continuance under Rule 56(f) to allow more time for discovery on the issue of Mowbray's reliance on the warranty provision and any subsequent waiver of it (the "Motion for Further Discovery"). Rule 56(f) provides that "[s]hould it appear from the affidavits of a party opposing [a motion for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed. R.Civ.P. 56(f) (1998).

The considerations in favor of allowing this continuance are not inconsequential. First, as Waste Management has noted, discovery regarding certain factual issues

has not been conducted, and the facts sought to be discovered are under the control of Mowbray, the party moving for summary judgment. *See Hebert v. Wicklund,* 744 F.2d 218, 222 n. 4 (1st Cir.1984) ("[C]ontinuances should be routinely granted under Rule 56[f] where the moving party has sole possession of the relevant facts that the non-moving party needs to oppose the summary judgment motion. . . .") (dicta); *Commonwealth Aluminum Corp. v. Markowitz,* 164 F.R.D. 117, 121 (D.Mass.1995) (Neiman, M.J.) (noting that the absence of discovery makes a Rule 56[f] motion especially compelling). Second, Waste Management's failure to conduct discovery prior to the Motion for Summary Judgment should not be held against it, considering that the trial schedule agreed upon by the parties does not call for discovery to close until September 30, 1999. Indeed, Mowbray recognizes that its Motion for Summary Judgment has been filed somewhat early: "It is obviously unusual for a summary judgment motion to be filed so early in a litigation." Mem. in Supp. of Motion to Amend at 3–4.

Nevertheless, timeliness alone does not guarantee the success of a Rule 56(f) motion. In addition,

> the moving papers must contain a proffer which, at a bare minimum, articulates a plausible basis for the movant's belief that previously undisclosed or undocumented facts exist, that those facts can be secured by further discovery, and that, if obtained, there is some credible prospect that the new evidence will create a trialworthy issue.

*Massachusetts Sch. of Law at Andover, Inc., v. American Bar Assoc.,* 142 F.3d 26, 44 (1st Cir.1998). In this case, Waste Management's argument that it requires discovery to develop facts regarding whether Mowbray relied on the warranty must fail because there is no chance that any such facts would raise a trialworthy issue. As has already been noted, Illinois law does not require reliance as an essential element of breach of warranty claims

when the existence of the warranty is not in dispute. Thus, Waste Management's purported need for discovery on the reliance issue is unavailing because, even if evidence of reliance was found, it would not be "capable of breathing life into [Waste Management's] claim or defense." *Resolution Trust Corp. v. North Bridge Assocs., Inc.,* 22 F.3d 1198, 1207 (1st Cir. 1994); *accord Mattoon v. City of Pittsfield,* 980 F.2d 1, 7 (1st Cir.1992) (desired materials must "raise a trialworthy issue"); *Paterson–Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 988 (1st Cir.1988) (desired materials must "suffice to engender an issue both genuine and material").

Equally unavailing is Waste Management's need for discovery on the issue of whether Mowbray waived the protections of the warranty provision. Admittedly, under Illinois law, "[p]arties to a contract have the power to waive provisions placed in the contract for their benefit." *Harrington v. Kay,* 136 Ill.App.3d 561, 91 Ill.Dec. 214, 483 N.E.2d 560, 563–64 (1985). "Such a waiver may be established by conduct indicating that strict compliance with the contractual provision will not be required" or when "the conduct of the person against whom the waiver is asserted is inconsistent with any other intention than to waive it." *Id.* at 564 (internal citations omitted). Waste Management's Motion for Further Discovery, however, contains nothing but the most general and conjectural allegations of waiver by Mowbray:

> Without discovery, Waste Management cannot fully develop what Mowbray (or his professional advisors, attorneys or other agents acting on his behalf) *knew* regarding Waste Management's accounting practices. Discovery will also allow Waste Management to develop a more complete record concerning the activities conducted by Mowbray in connection with the Warranty. These facts are necessary for a determination of [Mowbray's] express, or implied, waiver of the

Warranty and are sought in Waste Management's [discovery requests].

Mot. for Further Discovery at 5. These speculative assertions do not rise to the required standard under Rule 56(f). A "Rule 56(f) affidavit [that] merely conjectures that something might be discovered but provides no realistic basis for believing that further discovery would disclose evidence" is insufficient to delay summary judgment. *Mattoon,* 980 F.2d at 8. Indeed, Waste Management must raise the possible existence of "specified" discoverable facts. *See id.* (affidavit must present "plausible basis for asserting a belief that 'specified' discoverable facts probably exist[ ]" or "demonstrate a realistic prospect that further discovery would disclose evidence sufficient to defeat the motion for summary judgment"); *Paterson–Leitch Co.,* 840 F.2d at 988 (Rule 56[f] motion "should articulate some plausible basis for the party's belief that specified 'discoverable' material facts likely exist which have not yet come in from the cold.").

Waste Management has not done that in this case, despite the fact that it has already received some 2,094 pages of documents from Mowbray relating to the transaction at issue in this case.[5] *See* Mowbray's Reply Mem. at 17. Rather than cite to any of those two thousand pages as a basis for believing that specific facts likely exist, Waste Management has merely expressed a "hope" or "hunch" that unspecified facts might be found. *See* 8 Wright, Miller, & Kane, Federal Practice & Procedure: Civil 3d § 2741 at p. 443 (1998). Allowing a continuance in such a case would undermine the entire summary judgment procedure: "If all one had to do to obtain a grant of a Rule 56(f) motion were to allege possession by movant of certain information and other evidence, every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's file." *Vivid Techs., Inc. v. American Science & Eng'g, Inc.,* 997 F.Supp. 104, 107 (D.Mass.1998) (Keeton, J.) (*quoting Keebler Co. v. Murray Bakery Prod.,* 866 F.2d 1386, 1389 [Fed.Cir.1989] ). Thus, because Waste Management has not "allege[d] specific facts essential to the nonmovant's opposition," *Vivid Techs.,* 997 F.Supp. at 107, the Rule 56(f) request to delay summary judgment pending further discovery is DENIED. Furthermore, because neither of Waste Management's arguments against summary judgment have been accepted, and because Mowbray has otherwise met his burden of showing that no genuine issue of material fact surrounds Waste Management's breach of the Agreement, the Court also GRANTS the Motion for Partial Summary Judgment.[6]

### IV. *Conclusion*

For the foregoing reasons, the Court DENIES Waste Management's Motion for

---

5. In a "Supplemental Memorandum" filed some six weeks after the Court took this matter under advisement, Waste Management unearths deposition testimony which it believes establishes a genuine dispute regarding Mowbray's waiver of the warranty provisions. *See* Supp.Mem. at 6. Because Mowbray testified that he "didn't put any emphasis" on Waste Management's depreciation procedures and those procedures "had no bearing" on his decision, Waste Management argues that a jury could reasonably conclude that Mowbray waived the warranty protection. *Id.* This argument, however, takes Mowbray's testimony out of context. The question to which he was responding read, "[C]an you tell me whether or not *before you signed the contract in July of 1992,* you focused on the issue of depreciation and amortization of trucks and equipment?"

*Id.* at Ex. A, p. 99:1–5 (emphasis added). Evidence concerning Mowbray's state of mind *before* he signed the contract is both inadmissible as parol evidence, *see Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 236 Ill.Dec. 8, 706 N.E.2d 882, 884 (1999) (noting that parol evidence is inadmissible where contract is unambiguous), and irrelevant to the question of whether he waived the warranty provision *after* he signed the contract. Thus, Waste Management's attempt to create an issue of material fact out of Mowbray's deposition testimony fails.

6. In light of the grant of partial summary judgment, the Court DENIES as moot Mowbray's Motion to Amend.

Judgment on the Pleadings, DENIES Waste Management's Motion for Further Discovery, GRANTS Mowbray's Motion for Partial Summary Judgment as to Liability, and DENIES as moot Mowbray's Motion to Amend.