**Robert MOWBRAY, Plaintiff,**

v.

**WASTE MANAGEMENT HOLDINGS, INC., Defendant.**

**No. CIV. A. 98–11534–WGY.**

United States District Court, D. Massachusetts.

Oct. 15, 1999.

Edward F. Haber, Shapiro, Haber & Urmy, LLP, Boston, MA, for plaintiff.

James R. Carroll, John A. Sten, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, for defendant.

### MEMORANDUM AND ORDER

YOUNG, Chief Judge.

#### I.  Introduction.

By order dated April 26, 1999 (the "April 26 Order"), this Court granted the motion of the plaintiff Robert Mowbray ("Mowbray") for partial summary judgment as to liability on his breach of contract claim against the defendant Waste Management Holdings, Inc. ("Waste Management").  *See Mowbray v. Waste Management Holdings, Inc.,* 45 F.Supp.2d 132, 143 (D.Mass.1999).  Mowbray sold his business to Waste Management in exchange for Waste Management securities in July of 1992.  Several years later, in February of 1998, Waste Management announced that it drastically would restate earnings for the previous eight years.  In the April 26 Order, this Court held that Waste Management's accounting restatement con-

stituted an admission that Waste Management had breached its warranty to Mowbray that its financial statements adequately represented the fiscal health of the company. *See id.* at 139.

Mowbray now seeks class certification for the following class (the "Proposed Class"):

All persons or entities which engaged in transactions, during the period January 1, 1990 to February 24, 1998, with Waste Management, whereby Waste Management or its direct or indirect subsidiaries acquired assets of those persons and entities, or assets of entities owned by those persons or entities, for consideration which included, in whole or in part, common stock of Waste Management.

Pl. Mot. for Class Cert. at 1.

## II. *Factual Background.*

During the period from January 1, 1990 through February 24, 1998, Waste Management engaged in 119 transactions in which it acquired assets in exchange for Waste Management common stock. *See* Bird Aff. ¶¶ 3–4. Waste Management paid a total of 21,082,338 shares of Waste Management common stock in these transactions. *See id.* at ¶ 7. There are 324 persons or entities which sold the assets involved in the 119 transactions, and which Mowbray offers as potential members of the Proposed Class. *See id.* at ¶¶ 8–9.

The Proposed Class can be sub-divided in several important ways:

*The Illinois/Warranty Group.* 11 of the 119 transactions (encompassing 31 potential class members) involve contracts governed by Illinois law and contain operative provisions substantially the same as Mowbray's agreement. *See id.* at ¶ 20. Specifically, the eleven contracts indicate that financial statements of Waste Management have been provided to the sellers and that Waste Management warrants that those statements are accurate. *See id.* at ¶ 17.

*The Illinois/No Warranty Group.* 43 of the 119 contracts (encompassing 110 po-

tential class members) involve contracts governed by Illinois law but do not contain an express warranty by Waste Management. *See id.* at ¶ 21.

*The Non–Illinois/Warranty Group.* 21 of the 119 contracts (encompassing 50 potential class members) involve contracts that are governed by some state law other than Illinois, but do contain operative provisions substantially the same as Mowbray's agreement. *See id.* at ¶ 22.

*The Non–Illinois/No–Warranty Group.* 44 of the 119 contracts (encompassing 134 potential class members) involve contracts that are governed by some state law other than Illinois, and do not contain an express warranty by Waste Management.

These various sub-groups can also be reclassed as the *Warranty Group* (encompassing 32 transactions and 81 potential class members), the *No–Warranty Group* (encompassing 87 transactions and 244 potential class members), the *Illinois Group* (encompassing 54 transactions and 141 potential class members), and the *Non–Illinois Group* (encompassing 65 transactions and 184 potential class members).[1] These various iterations may seem complicated (or odd), but they become useful when discussing the required elements of commonality and predominance for class certification.

## III. *Analysis.*

### A. *Standard for Class Certification.*

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court may certify a class if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In addition, a class action may be maintained only if: "the court finds that the questions of law or fact com-

---

**1.** These figures were extrapolated from the parties' calculations of the total members of the Potential Class and the previously described subclasses. Because the parties differ on whether the Warranty Group contains 80 or 81 members, *compare* Nazerian Aff. ¶ 6 *with* Bird Aff. ¶ 19, the total adds up to 325 instead of 324 members.

mon to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

Ordinarily, the motion for class certification in a litigation comes prior to dispositive motions such as the partial summary judgment motion won by Mowbray in this case. As this Court has noted, however, the benefit of ruling on a partial summary judgment motion prior to a motion for class certification lies in helping to define the class:

> Where a plaintiff class is sought, if counsel for the named plaintiff can frame a compelling motion, even for partial summary judgment, its allowance will operate with preclusive effect upon the defendant and will produce a substantive record that will inform the Court, as nothing else could, of the proper parameters of the plaintiff class and whether the named plaintiff will fairly and adequately represent that class.

*Moniz v. Crossland Mortgage Corp.*, 175 F.R.D. 1, 1 n. 1 (D.Mass.1997). As will be seen, the instant case provides verification of the practical worth of this trial management technique.

### B. *Examination of the Sub–Groups.*

The parties focus almost exclusively on the question of whether the common issues of law and fact predominate over individual issues. Because this consideration varies significantly between the different groups of potential class members, this Court will address pertinent sub-groups in turn.

#### 1. *The No–Warranty Group.*

■ Mowbray's most precarious group of potential class members are those parties whose agreements with Waste Management did not contain an express warranty.[2] The central holding of the April 26 Order was that, under Illinois law, Mowbray was not required to show actual or reasonable reliance to recover on an *express* warranty. *See Mowbray*, 45 F.Supp.2d at 138. The Court also noted that parties seeking to recover on an implied warranty *did* have to show reliance in order to demonstrate that a warranty was created. *Id.* at 136. Thus, the most obvious way in which the No–Warranty Group differs from Mowbray and the remaining potential class members is that they must show an additional, fact-intensive element in order to prove liability.

■ Mowbray attempts to counter this distinction by arguing that the No–Warranty Group would be entitled both to prosecute an action for breach of warranty under Section 2–313 of the Uniform Commercial Code (the "UCC") and to receive the benefit of a presumption of reliance in such an action. Mowbray argues that because even the No–Warranty Group received financial statements from Waste Management, those statements constituted an "affirmation of fact ... made by the seller to the buyer which ... becomes part of the basis of the bargain [and] creates an express warranty...." U.C.C. § 2–313. Mowbray recognizes that Article Two of the UCC governs the sale of "goods" which are defined to exclude "investment securities," U.C.C. § 2–105(1), but believes that the Code would be applied by analogy to the present situation by the relevant state courts. The only case on point cited by either party, however, expressly holds the opposite. *See IMI Sys. Inc. v. Sterling Software, Inc.*, No. 90 Civ.2005(JMC), 1991 WL 222107, at *4 (S.D.N.Y. Oct. 18, 1991) (dismissing claim for "breach of implied warranty of truth and accuracy" of financial statements because the "established rule where sales of securities are concerned [is that] the only implied warranties are those of title, genuineness and

**2.** Mowbray somehow believes that the Illinois/No–Warranty Group is in better shape than the Non–Illinois/No–Warranty Group because "this Court engaged in an extensive analysis of breach of warranty jurisprudence, under Illinois law...." Mowbray Mem. at 5. This Court simply held, however, that under Illinois law, actual reliance need not be demonstrated by parties to an *express* warranty. *See Mowbray*, 45 F.Supp.2d at 138. The fact that the Illinois/No–Warranty Group *does* need to show actual reliance is not rendered less distinct from Mowbray's case in chief simply because it happens to be *Illinois* law that requires the additional element of proof. It is the specific applicable law that must be common to a class, not the jurisdiction that supplies it.

validity") (citations and internal quotations omitted).

Even if the section 2–313 approach were adopted, however, Mowbray could still not overcome the fact that reliance is a required element. Admittedly, comment 3 to section 2–313 establishes a presumption of reliance, but it is a rebuttable one. *See Weng v. Allison*, 287 Ill.App.3d 535, 223 Ill.Dec. 123, 678 N.E.2d 1254, 1256 (1997) (noting that the "burden is upon the seller to establish by clear, affirmative proof that the affirmations did not become part of the basis of the bargain"); *Wheeler v. Sunbelt Tool Co., Inc.*, 181 Ill.App.3d 1088, 130 Ill.Dec. 863, 537 N.E.2d 1332, 1341 (1989) (noting that "affirmations made during the bargain are presumed to be a part of it unless clear, affirmative proof shows otherwise"). Thus, whether as a matter of required proof by the plaintiff or rebuttal proof by the defendant, the individual issue of reliance would still need to be litigated. In such a situation, certification as to the Non–Warranty Group appears inappropriate. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 341–42 (4th Cir.1998) (noting that "because reliance must be applied with factual precision, plaintiffs' fraud and negligent misrepresentation claims do not provide a suitable basis for class-wide relief") (citations and internal quotations omitted); *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 (5th Cir.1996) (holding that "a fraud class action cannot be certified when individual reliance will be an issue"); *Mack v. General Motors Acceptance Corp.*, 169 F.R.D. 671, 678 (M.D.Ala.1996) (stating that, where individual reliance must be shown, "[t]here is no way to resolve the reliance issue on a class-wide basis").

Mowbray attempts to circumvent these problems by arguing that "reliance may be shown on a *class-wide* basis." Pl. Reply Mem. at 8. Two primary cases, from California and New York, are cited in support of the notion that "where a defendant has communicated identical or materially similar representations to the members of a class, as has the defendant here, a class-wide inference of reliance arises...." *Id.* First, in *Vasquez v. Superior Court of San Joaquin County*, 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 (1971), the Supreme Court of California held that plaintiffs in a class action suit would benefit from "an inference of reliance ... as to the entire class." *Id.* at 973. Likewise, in *Ackerman v. Price Waterhouse*, 252 A.D.2d 179, 683 N.Y.S.2d 179, 192 (1998), the court held that "reliance issues are no bar to class certification where identical representations are made in writing to a large group...."

These cases are distinguishable. *Vasquez* does not control because it involved allegations of fraud perpetrated against low-income installment purchasers of freezer food packages. *See Vasquez*, 94 Cal.Rptr. 796, 484 P.2d at 970. The plaintiffs each allegedly succumbed to an identical, memorized sales pitch delivered by door-to-door salespersons. *See id.* at 971. The instant transactions involved an average consideration of $6,500,000 and resulted from involved negotiations with legal representation on both sides of the table. *See* Def. Opp. Mem. at 3 n. 2. This factual distinction alone renders the instant case inappropriate for use of the class-wide inference of reliance. Moreover, in creating the inference of reliance, the *Vasquez* court specifically noted that "[d]efendants may, of course, introduce evidence in rebuttal." *Vasquez*, 94 Cal.Rptr. 796, 484 P.2d at 973. While the Supreme Court of California may not have found this individualized evidentiary issue a persuasive reason for denying certification, this Court does.

*Ackerman* is inapplicable because it was specifically restricted to cases involving a fiduciary relationship between a professional service-provider and a client. *See Ackerman*, 683 N.Y.S.2d at 193. Indeed, the *Ackerman* court cited several cases in which class certification was denied in securities sales settings precisely because of the issue of reliance: "The common thread running through most of these cases is the issue of whether a purchaser relied on the misrepresentations of the sellers in making the decision to purchase or retain shares." *Id.* (citing *Vermeer Owners, Inc. v. Guterman*, 564 N.Y.S.2d 335, 337–38, 169 A.D.2d 442 (1991) [class certification denied in fraud case where no evidence that co-op investors relied on misrepresentations in offering plan]; *Katz v.*

*NVF Co.,* 473 N.Y.S.2d 786, 789, 100 A.D.2d 470 (1984) [individual issue of reliance predominated where shareholders alleged that they retained shares upon public misrepresentation by corporation regarding proposed merger] ).

In addition to these legal distinctions, there are sound practical reasons for being reluctant to certify the No–Warranty Group. With respect to allowing a presumption of reliance, the only evidence in the record seems to point to the fact that the No–Warranty Group *did not,* in fact, rely on the financial representations of Waste Management. If they had, they presumably would have sought the extra protection (in the form of an express warranty) as did the Warranty Group. With respect to the requirement of typicality, as Waste Management points out, there is no reason "why the damage claims of those whose contracts contain express waivers should remain tied up while those whose contracts do not attempt to prove, through individual proof of reliance, that their contracts even contained such a warranty." Def. Mem. at 17.

Thus, because a class-wide presumption of reliance is unwarranted in this context, and because proving reliance requires individualized factual determinations, the Court DENIES certification as to the No–Warranty Group.

### 2. *The Non–Illinois/Warranty Group.*

Mowbray is now left with two sub-groups of potential class members: the Illinois/Warranty Group and the Non–Illinois/Warranty Group. The primary distinguishing feature of the Non–Illinois/Warranty Group is the fact that the laws of several different states apply to their claims.[3] These states are California, Georgia, Pennsylvania, Maryland, Michigan, New York, Texas, Virginia, and Wisconsin. *See* Pl. Mem. at 15 n. 5. In order for certification to be proper under Rule 23(b), "variations in state law [must not] swamp any common issues and defeat predominance." *Castano,* 84 F.3d at 741 (decertifying class because variations in state law precluded finding of predo-

minance); *see also Ilhardt v. A.O. Smith Corp.,* 168 F.R.D. 613, 620 (S.D.Ohio 1996) (same). In this District, a split exists over which party must bear the burden of showing whether a conflict of multistate law predominates over common issues. *Compare Gorsey v. I.M. Simon & Co., Inc.,* 121 F.R.D. 135, 140 (D.Mass. 1988) (Zobel, J.) (plaintiff's burden) *with Margaret Hall Found., Inc. v. Atlantic Fin. Mgmt., Inc.,* Civ. A. No. 82–2534–T, MDL No. 584, 1987 WL 15884, at *6 (D.Mass. July 30, 1987) (Skinner, J.) (defendant's burden). Because no significant multistate conflict exists, this Court does not address the issue.

Waste Management contends that common issues of law and fact are overcome by differing state statute of limitations periods and rules for equitable estoppel, fraudulent concealment, and other tolling devices. *See* Def. Opp. Mem. at 14. After conducting an exhaustive survey of state statute of limitations law, Waste Management concluded that 41 of the 119 transactions involved in the Proposed Class are presumptively time-barred. This fact, Waste Management argues, demonstrates that difficult, individualized questions of equitable tolling will overshadow any commonality among the members of the Non–Illinois/Warranty Group and the Illinois/Warranty Group. However, "[c]ourts have been nearly unanimous ... in holding that possible differences in the application of a statute of limitations to individual class members ... does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." *In re Energy Sys. Equip. Leasing Sec. Litig.,* 642 F.Supp. 718, 752–53 (E.D.N.Y.1986); *accord CV Reit, Inc. v. Levy,* 144 F.R.D. 690, 699 (S.D.Fla.1992) (finding defendants' contention that statutes of limitations defenses precluded predominance "inappropriate" at class certification stage); *Gruber v. Price Waterhouse,* 117 F.R.D. 75, 78–80 (E.D.Pa.1987) (statute of limitations defense goes to merits of case and is beyond scope of class certification issue); *Riordan v. Smith Barney,* 113 F.R.D. 60, 65

---

**3.** Massachusetts courts generally enforce contractual choice-of-law provisions unless unrea-

sonable. *See, e.g., Lambert v. Kysar,* 983 F.2d 1110, 1118 (1st Cir.1993).

(N.D.Ill.1986) (holding that "individual problems involving statutes of limitations and ascertainment of damages do not preclude a finding of predominance under Rule 23[b][3]."); *Ungar v. Dunkin' Donuts of Am., Inc.,* 68 F.R.D. 65, 140 (E.D.Pa.1975) (holding that individual issues regarding tolling did not defeat certification because such issues were "routinely" dealt with during separate damages determinations), *rev'd on other grounds,* 531 F.2d 1211 (3d Cir.1976).[4] This Court likewise holds that potentially divergent statute of limitations determinations do not negate commonality and predominance in the instant action.

■ Waste Management next argues that predominance is defeated by multistate variations in the law of contractual warranties. Specifically, Waste Management contends that some state may require an individualized determination of reliance on the express warranty, in contrast to Illinois law which dispenses with such a requirement. A decisive majority of courts that have considered the issue, however, have held, as this Court did in the April 26 Order with respect to Illinois law, that reliance is not an element of a claim for breach of warranty, when the fact that the warranty was created is not in dispute. *See, e.g., Wikoff v. Vanderveld,* 897 F.2d 232, 240–41 (7th Cir.1990) (Illinois law); *Lennar Homes, Inc. v. Masonite Corp.,* 32 F.Supp.2d 396, 398 (E.D.La.1998) (Florida law); *Giuffrida v. American Family Brands, Inc.,* No. Civ. A. 96–7062, 1998 WL 196402, at *4 (E.D.Pa. Apr. 23, 1998) (Pennsylvania law); *Pegasus Mgmt. Co., Inc. v. Lyssa, Inc.,* 995 F.Supp. 29, 39 (D.Mass.1998) (Collings, M.J.) (Connecticut law); *Glacier Gen'l Assurance Co. v. Casualty Indem. Exch.,* 435 F.Supp. 855, 860–61 (1977) (Montana law); *CBS Inc. v. Ziff–Davis Publishing Co.,* 75 N.Y.2d 496, 554 N.Y.S.2d 449, 553 N.E.2d 997, 1000–01 (1990) (New York law); *Essex Group, Inc. v. Nill,* 594 N.E.2d 503, 506–07 (Ind.Ct.App.

1992) (Indiana law); *Wechsler v. Long Island Rehab. Ctr. of Nassau, Inc.,* 1996 WL 590679 at 22–23, 1996 Mass.Super.LEXIS 626, *79–81 (Mass.Sup.Ct. Sept. 4, 1996) (Botsford, J.) (Massachusetts law).

Only two states have been identified by either party as requiring reliance for breach of warranty, when there is no dispute that the warranty was created. *See Hendricks v. Callahan,* 972 F.2d 190, 192–94 (8th Cir.1992) (Minnesota law); *Land v. Roper Corp.,* 531 F.2d 445, 448 (10th Cir.1976) (Kansas law). Neither of these states is among those represented by the Non–Illinois/Warranty Group. Moreover, there is reason to suspect that the cited cases are no longer solid law. In *Land,* the court's decision was based on an analogy to U.C.C. § 2–313 which required reliance at the time, but no longer does, *see Roper,* 531 F.2d at 448; in *Hendricks,* the federal court felt itself bound by a 1944 decision of the Minnesota Supreme Court, *see Hendricks,* 972 F.2d at 194. Thus, were the highest court of either state to revisit the issue today, a different result might likely attain. The more modern view which these courts would probably adopt is reflected well in the opinion of the United States District Court for the District of Pennsylvania:

> [T]he Roper/Hendricks … approach is inconsistent with the commercial realities of these complex purchase agreements negotiated over several months by sophisticated parties. The representations and warranties in these transactions define and apportion the risks that the parties negotiated.… I find that the Roper/Hendricks approach is inconsistent with this commercial reality because it permits sellers to escape liability for negotiated representations and warranties by arguing to a factfinder that buyers did not rely on the representations and warranties. Thus, in essence, the Roper/Hendricks approach al-

---

4. Moreover, it does not appear that the statute of limitations issues will be that troublesome to resolve. No statute of limitations defense exists with respect to 78 of the 119 transactions at issue. *See* Pl. Reply Mem. at 14. Furthermore, among transactions containing warranties, only 13 of the 32 transactions are presumptively time-barred, *see* Nazerian Aff. at 6, implicating only eight different states' statutes of limitations laws,

*see id.* at Ex. G. Half of these eight states have a discovery rule while the remaining half have an operationally similar fraudulent concealment rule. *See* Pl. Reply Mem. at 16. Under either rule, the factual proffer will be largely the same, depending as it does on the fact that Waste Management had exclusive control over the collection and release of its financial data.

lows contracting parties to avoid the plain meaning and effect of the. contract to which they agreed.

*Giuffrida,* 1998 WL 196402, at *4.

Both because direct precedent exists in two of the states represented by the Non–Illinois/Warranty Group (New York and Pennsylvania) and because the clear majority of remaining courts favor the approach taken under Illinois law, the Court holds that a class-defeating difference of law regarding the treatment of reliance in breach of express warranty cases has not been demonstrated.

Waste Management's remaining arguments against certification of the Non–Illinois/Warranty Group also apply to the Illinois/Warranty Group, and thus they will be addressed together.

### 3. *The Warranty Group.*

█ Waste Management has two remaining arguments against certification of the Warranty Group as a class under Rule 23.[5] First, Waste Management contends that Mowbray has not demonstrated any compelling reason *why* class action is a superior device to individualized litigation. Citing the large value of stock received by the proposed class members, Waste Management argues, "These wealthy and sophisticated entrepreneurs know how to raise their concerns with the Company, to retain lawyers, and to file suit. . . . These multimillionaires hardly need the 'protection' of a class action." Def. Opp. Mem. at 3–4. Judge Skinner has provided a persuasive response to this line of reasoning:

I do not agree that Rule 23(b)(3) class actions are available only to the poor or in circumstances where numerous small claims would otherwise go unredressed. They are available whenever the prerequisites of Rule 23(a) are met, common issues

predominate, and individual actions would be unduly burdensome on either the courts or the parties.

There is evidence that some limited partners are waiting to see whether the class action is certified and may file individual claims if it is not. If this supports the defendants' argument about their incentive to proceed individually, it also indicates that the litigation is likely to multiply should class certification be denied. It is also probable that many limited partners, despite their wealth, have no incentive to sue alone but would be happy to join a class action.

*Fulco v. Continental Cablevision, Inc.,* CIV. A. No. 89–1342–S, 1990 WL 120688, at *4 (D.Mass. June 19, 1990). This Court also refuses to deny certification simply because the prospective plaintiffs could afford individual litigation.

█ Second, Waste Management contends that the question of whether any claimant *waived* the protection of the express warranty will require individualized adjudication, such that common issues of law and fact will no longer predominate the litigation. *See* Def. Mem. at 7. To be sure, the potential defense of waiver does turn upon individual plaintiffs' conduct. *See Mowbray,* 45 F.Supp.2d at 142 (*citing Harrington v. Kay,* 136 Ill.App.3d 561, 91 Ill.Dec. 214, 483 N.E.2d 560, 563–64 [1985]). Similarly, parties may waive their right to assert a claim for breach of warranty under some states' laws if the warranting party discloses up front the inaccuracy of the warranty. *See, e.g., Promuto v. Waste Management, Inc.,* 44 F.Supp.2d 628, 645 (S.D.N.Y.1999).

Neither of these possibilities seems credible, however, in the context of the transactions conducted by Waste Management. Just as Waste Management was unable to

---

**5.** A third argument, raised at oral argument, merits little discussion. Counsel for Waste Management suggested that certification would be inappropriate because it would interfere with the company's efforts to rebuild itself after the accounting exploits that gave rise to this and other litigation. Besides being unrelated to the elements of Rule 23, this suggestion was highly ironic as it came just one day after a member of the Waste Management corporate family was

fined nearly $12,000 by the City of Tacoma for illegally dumping thousands of gallons of raw sewage into Commencement Bay. *See* Tamyra Howser, "Tacoma Penalizes Port-o-Let $12,000" Tacoma News Trib. at B1, July 28, 1999. If this is how Waste Management "rebuilds itself," certification in this case might have the positive effect of occupying corporate resources that might otherwise be devoted to further rebuilding.

offer anything but "the most general and conjectural allegations of waiver" in support of its Rule 56(f) motion, *Mowbray,* 45 F.Supp.2d at 142, it seems unlikely that Waste Management will be able to survive summary judgment on the waiver issue as to the remaining members of the Warranty Group. The very reason that 32 of the transactions contained express warranties, while 87 did not, can be presumed to be that the sellers in the 32 transactions desired the added protection of an express warranty. Under such circumstances, waiver would need to be established by clear and unequivocal conduct. *See Giuffrida,* 1998 WL 196402, at *5 n. 14. Moreover, if Waste Management really intends to argue that it disclosed to the parties up front the inaccuracy of its financial statements, it will in essence be arguing that it knowingly conspired, committed securities fraud violations and concealed such conduct from the public for several years. This Court would be justified in using such an admission as grounds for judicially estopping Waste Management from asserting the defense of waiver.

Because Waste Management's arguments against the Warranty Group have failed to hit their mark, and because the requirements of Rule 23 are otherwise satisfied, this Court will certify a class limited to those parties in the Warranty Group.

### IV. *Conclusion*

Thus, the Court DENIES IN PART and GRANTS IN PART the Motion for Class Certification by certifying the following class, consisting of approximately 81 potential members from approximately 32 separate transactions:

> All persons or entities which engaged in transactions, during the period January 1, 1990 to February 24, 1998, with Waste Management, whereby (i) Waste Management or its direct or indirect subsidiaries acquired assets of those persons and entities, or assets of entities owned by those persons or entities, for consideration which included, in whole or in part, common stock of Waste Management, (ii) Waste Management furnished financial statements to those persons and entities per-

taining to its results during the period January 1, 1990 to February 24, 1998, and (iii) Waste Management expressly warranted by contract provision the truth and accuracy of such financial statements.

SO ORDERED.